**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
NEW YORK LIFE INSURANCE COMPANY,

               Plaintiff,

         -against-

MARIA APOSTOLIDIS, PENELOPE
APOSTOLIDIS, HELEN APOSTOLIDIS, and
LISA APOSTOLIDIS,

               Defendants.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
10-cv-5672 (ADS)(WDW)

**APPEARANCES:**

**d'Arcambal Levine & Ousley**
*Attorneys for the Plaintiff*
40 Fulton Street, Ste. 1005
New York, NY 10038
    By:    Kimberly A. O'Toole, Esq., of Counsel

**Leavitt, Kerson & Duane**
*Attorneys for the Defendant Penelope Apostolidis*
118-35 Queens Blvd., Ste. 1250
Forest Hills, NY 11375
    By:    Paul E. Kerson, Esq., of Counsel

**Maria Apostolidis**
*Defendant Pro Se*
784 Fulton Avenue
Bohemia, NY 11716

**Helen Apostolidis**
*Defendant Pro Se*
784 Fulton Avenue
Bohemia, NY 11716

**Lisa Apostolidis**
*Defendant Pro Se*
1051 Villa Ct. SE Apt. 1
Atlanta, GA 30316

**SPATT, District Judge.**

The Plaintiff New York Life Insurance Company ("NY Life") has filed the present motion, requesting the Court to permit the company to interplead life insurance proceeds that have been the subject of conflicting claims by the Defendants. In addition, NY Life has moved for (1) a discharge from the present action, (2) a permanent injunction enjoining any of the parties to this action from commencing any other actions or proceedings seeking payment of the interpleader funds, and (3) attorneys' fees and costs.

## I. BACKGROUND

### A. Factual Background

There are two relevant life insurance policies at issue: Policy 34 575 081 ("Policy 081") and Policy 37 310 131 ("Policy 131") (collectively, the "Policies"). The Plaintiff's submissions to the Court do not indicate the face amount of either policy, but only state that the amounts due and payable are $10,847.52 for Policy 081 and $118,191.20 for Policy 131. Both of the Policies were issued by NY Life, the Plaintiff, to insure the life of Konstantinos Apostolidis ("the Insured"). On December 16, 1974, the Insured designated his wife, Defendant Maria Apostolidis, as the first beneficiary of Policy 081, and "Children" as secondary beneficiaries. On May 6, 1980, the Insured again designated his wife, Defendant Maria Apostolidis, as the first beneficiary of Policy 131, and "Children" as secondary beneficiaries.

On November 25, 2005, the Insured filed a Change of Beneficiary Request Form for both Policies and designated his wife, Defendant Maria Apostolidis, as the

first beneficiary, and his children, Defendants Penelope Apostolidis, Helen Apostolidis, and Lisa Apostolidis, as secondary beneficiaries. On February 10, 2010, the Insured filed another Change of Beneficiary Request Form only for Policy 131, designating Penelope Apostolidis as the beneficiary.

The Insured died on July 30, 2010. As a result of his death, proceeds in the amounts of $10,847.52 for Policy 081 and $118,191.20 for Policy 131 (the "Death Benefits") became due and payable to a beneficiary or beneficiaries, as the Plaintiff NY Life concedes.

On August 5, 2010, the Defendant Penelope Apostolidis advised the Plaintiff that, among other things, she was the named beneficiary of the Policies. In response, the Company informed Penelope Apostolidis that she was the named beneficiary of Policy 131, but that she was not the named beneficiary of Policy 081. On August 10, 2010, the Insured's wife Defendant Maria Apostolidis asked the Plaintiff by letter not to pay the Death Benefits to Penelope Apostolidis.

Thereafter, on September 3, 2010, the Defendant Helen Apostolidis also made a claim for the Death Benefits and questioned the validity of the beneficiary change to her sister, Defendant Penelope Apostolidis, because the Insured had been ill for the last one and one-half years of his life. In addition, also on September 3, 2010, the Defendant Lisa Apostolidis made a claim for the Death Benefits, similarly questioning any beneficiary change made in the last two years before the Insured's death because he had been ill. On September 6, 2010, the Defendant Penelope Apostolidis made a claim for the proceeds of Policy 131.

On September 8, 2010, NY Life requested both Helen Apostolidis and Lisa Apostolidis to provide a statement from the Insured's physician regarding his mental competency. (See Pl. Ex. I) ("Due to the circumstances of this claim, it will be necessary to secure a Statement of Competency from the insured's Attending Physician, indicating the insured's state of mind during that time period."). However, the Plaintiff states that it never received such a medical statement.

Finally, on October 6, 2010, Maria Apostolidis also made a claim for the Death Benefits of both policies.

**B. Procedural History and the Present Motion**

On December 8, 2010, the Plaintiff NY Life filed this Complaint in Interpleader, seeking to deposit the Death Benefits with the Court. Counsel for the Plaintiff subsequently secured consent to interplead and deposit the proceeds of both policies from the pro se Defendants Maria Apostolidis, Helen Apostolidis, and Lisa Apostolidis. However, counsel for Penelope Apostolidis refused to consent. On April 6, 2011, the Plaintiff filed the instant motion to deposit the insurance proceeds and for a dismissal of NY Life from this action. Only the Defendant Penelope Apostolidis has filed an objection in response to this motion.

NY Life states that it is ready, willing, and able to pay the Death Benefits, plus interest, if any, in accordance with the terms of the Policy. However, under the circumstances, the Plaintiff states that it cannot determine factually or legally who is entitled to the Death Benefits, and thus the Company may be exposed to multiple liability.

On the other hand, Penelope Apostolidis argues first, that she is entitled to the benefits of Policy 131 and thus the Court should simply direct the Plaintiff to pay her the Death Benefits. Second, she contends in the alternative that this case should be transferred to Suffolk County Surrogate's Court, where the Insured's estate is currently being probated.

## II. DISCUSSION

### A. As to Statutory Interpleader in General

NY Life has filed a statutory interpleader suit pursuant to 28 U.S.C. § 1335. "[I]nterpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." Fidelity Brokerage Servs., LLC v. Bank of China, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) (citing Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993)). Section 1335 provides in pertinent part:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more . . . if
>
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property . . . and if (2) the plaintiff has deposited such money . . . into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

Section 1335 provides the federal district courts with jurisdiction to hear an interpleader case, and has also been interpreted to provide the elements of an interpleader claim. First, a plaintiff alleging an interpleader action must allege that it is in possession of a single fund of value greater than $500. Bankers Trust Co. v. Manufacturers Nat. Bank of Detroit, 139 F.R.D. 302 (S.D.N.Y. 1991) (citing to State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S. Ct. 1199, 18 L. Ed. 2d 270 (1967)). Second, the plaintiff must allege "a real and reasonable fear of double liability or vexatious, conflicting claims" Washington Electric Coop., Inc., 985 F.2d at 679, against the single fund, "regardless of the merits of the competing claims." Fidelity Brokerage, 192 F. Supp. 2d at 177; see also Locals 40, 361 & 417 Pension Fund v. McInerney, No. 06 Civ. 5224, 2007 WL 80868, *3 (S.D.N.Y. Jan 9, 2007). Finally, pursuant to the plain language of Section 1335, a plaintiff must state that it has or is depositing the fund with the court.

In addition, a federal district court may only take jurisdiction over an interpleader action where there are "[t]wo or more adverse claimants, of diverse citizenship." 28 U.S.C. § 1335. See Hudson Pak Establishment v. Shelter for Homeless, Inc., 224 Fed App'x 26, 29 (2d Cir. 2007).

> [Section 1335] has been uniformly construed to require only "minimal diversity," that is, diversity of citizenship between two or more claimants without regard to the circumstance that other rival claimants may be co-citizens. The language of the statute, the legislative purpose broadly to remedy the problems posed by multiple claimants to a single fund, and the consistent judicial interpretation tacitly accepted by Congress, persuade us that the statute requires no more.

Id. (quoting State Farm Fire & Cas. Co, 386 U.S. at 530).

28 U.S.C. § 2361 provides the procedure for determination of an interpleader claim, and states in pertinent part:

> Such district court shall hear and determine the [interpleader] case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

The Second Circuit has interpreted this statute to generally require a two-step procedure to decide an interpleader action. In the first step, the Court determines whether the jurisdictional requirements of Section 1335 have been met and, if it finds they have been, the Court discharges the plaintiff from liability. See New York Life Ins. Co. v. Connecticut Development Authority, 700 F.2d 91, 95 (2d Cir. 1983); Locals 40, 361 & 417 Pension Fund, 2007 WL 80868 at *3. In the second step, the Court adjudicates the claims among the remaining adverse parties. Id.

**B. As to Whether the Jurisdictional Requirements of Section 1335 Have Been Met**

As stated above, a plaintiff that commences an interpleader action must allege: (1) that it is in possession of a single fund of value greater than $500; (2) a real and reasonable fear of double liability or vexatious, conflicting claims; and (3) that it has deposited or is depositing the fund with the court.

Here, the Court finds that the Plaintiff NY Life has satisfied all of these requirements. A fund of $129,038.72 is being held by NY Life, and thus the proceeds of the policy exceed $500. Second, NY Life is a neutral party taking no position as to the proper disbursement of those funds against multiple and

conflicting claims to the Death Benefits. Third, the Plaintiff has requested this Court to permit it to deposit the relevant funds with the Court.

Finally, according to the allegations of the complaint, the Defendant Lisa Apostolidis is a citizen of the State of Georgia while the remaining Defendants are citizens of the State of New York. Thus, the claimants to the fund satisfy the minimal diversity requirement of the interpleader statute. 28 U.S.C. § 1335 (requiring "Two or more adverse claimants, of diverse citizenship"); see also N.Y. Life Ins. Co. v. Conn. Dev. Auth., 700 F.2d 91, 95 n.5 (2d Cir. 1983). Therefore, all of the jurisdictional requirements of Section 1335 have been met.

**C. As to the Defendant Penelope Apostolidis' Objections**

Only one of the Interpleader Defendants, Penelope Apostolidis, has objected to the Plaintiff's motion. The Court will address both grounds for the Defendant's objection.

**1. Whether the Merits of the Defendant's Claim is Relevant**

First, the Defendant Penelope Apostolidis opposes NY Life's interpleader motion because she argues that based upon the strength of the evidence, the Court should simply direct the Plaintiff to pay Penelope Apostolidis the sum of $118,191.20 with interest. She points to both the change of beneficiary request form signed by the Insured, as well as the Plaintiff's letter dated August 6, 2010, which states that "our records indicate that you are the named beneficiary 37-310-131." Essentially, she argues that she is the proper beneficiary of one of the insurance policies referenced in the Complaint and therefore the Plaintiff's motion to interplead is improper.

As an initial matter, even if this Court were to agree with this contention, there is nevertheless a dispute over the proper beneficiaries of Policy 081, because the Defendant cannot point to any change of beneficiary request with regard to that policy.

More importantly, the fact that Defendant Penelope Apostolidis believes that she is entitled to the Death Benefits does not prevent this Court from granting the Plaintiff's present motion to interplead. Both Penelope Apostolidis' sisters and mother have filed claims to the Death Benefits and have questioned whether the Insured was competent to execute the Change of Beneficiary Form naming Penelope Apostolidis as the sole beneficiary. This is precisely the situation for an interpleader action, which requires a plaintiff to allege "a real and reasonable fear of double liability or vexatious, conflicting claims" <u>Washington Electric Coop., Inc.</u>, 985 F.2d at 679, against the single fund, "regardless of the merits of the competing claims." <u>Fidelity Brokerage Servs.</u>, 192 F. Supp. 2d at 177. Thus, the fact that multiple claims have been asserted for the Death Benefits is the very reason that an interpleader action is appropriate, notwithstanding the supposed strength of the evidence of the Defendant Penelope Apostolidis. Accordingly, due to these competing and adverse claims asserted by the Defendants, the Company is unable to determine the proper beneficiary or beneficiaries of the Death Benefits and it is entirely proper for the company to seek the Court's assistance in determining to whom the Death Benefits should be paid.

## 2. Whether This Matter Should be Transferred to Suffolk County Surrogate's Court

Second, the Defendant Penelope Apostolidis opposes the Plaintiff's motion on the ground that this matter should be transferred to the contested Estate of Konstantinos Apostolidis, File No. 2010-3311, which is now pending in Suffolk County Surrogate's Court, in order to conserve judicial resources. According to the Defendant, "[i]f this matter is not remanded to the Suffolk County Surrogate's Court, this Court will be burdened with a full scale litigation over one item in a contested estate that concerns numerous other items. This would not be a wise use of the resources of the Court system, of the parties, or of their attorneys." (Def. Opp. at 2.)

While the Court agrees with the Defendant that judicial resources should be conserved wherever possible, the Court nevertheless has proper jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335.

Ordinarily, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, which should only be abdicated in favor of the state courts in "exceptional circumstances." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). In the present case, it is entirely proper for this Court to have jurisdiction over an interpleader action commenced to determine the rightful beneficiaries of life insurance policies, regardless of a pending action in Surrogate's Court relating to the Insured. See, e.g., Hartford Life Insur. Co. v. Einhorn, 497 F. Supp. 2d 398, 399 (E.D.N.Y. 2007) (Spatt, J.) ("In the probate proceeding in the Surrogate's

Court of Suffolk County, a dispute arose between the Estate and the *pro se* defendants regarding the proper distribution of the life insurance funds from Hartford. . . . On June 30, 2004, Hartford commenced this action, seeking to deposit the proceeds of the Policy with the Court and to be excused from further involvement in the defendants' resolution of their competing claims."); Sun Life Assur. Co. of Canada v. Gruber, No. 05 Civ. 10194, 2006 U.S. Dist. Lexis 35932 (S.D.N.Y. June 1, 2006) (finding that the exercise of federal jurisdiction over an interpleader action was proper and did not require transferring of the case to the Surrogate's Court.)

The Court is aware that it may be required in the course of this litigation to make a determination as to the Insured's mental state prior to his death, which is an issue that is typically decided in Surrogate's Court. However, this Court does not believe that resolution of this case will interfere with probating the Insured's estate. See Giardina v. Fontana, 733 F.2d 1047, 1051 (2d Cir. 1984) (noting that "the Surrogates' Courts commonly handle such questions . . . but so do the federal courts") (quoting Beach v. Rome Trust Co., 269 F.2d 367, 374 (2d Cir. 1959)); Sun Life, 2006 U.S. Dist. Lexis 35932, at *11; Gardner v. Weisman, No. 06 Civ. 6003, 2007 U.S. Dist. LEXIS 280, at *11 (S.D.N.Y. Jan. 5, 2007).

A probate exception to this Court's jurisdiction does exist, which provides that "a federal court has no jurisdiction to probate a will or administer an estate." Dulce v. Dulce, 233 F.3d 143 (2d Cir. 2000). However, "the probate exception to federal jurisdiction is inapplicable here, as this Court is not being called on to probate the decedent's will or administer his estate. Instead, this action was filed

11

for the sole purpose of determining the proper beneficiary of a life insurance policy, a fact which minimizes any inconvenience argument asserted by [the Defendant]." Sun Life, 2006 U.S. Dist. Lexis 35932, at *11.

In addition, the Court's inquiry into any duress or undue influence will be circumscribed by the ultimate issue; namely, who is entitled to the Death Benefits. Moreover, there is no danger of inconsistent rulings because the Surrogate's Court is bound by any judgment rendered here. See Ashton v. The Josephine Bay Paul & C. Michael Paul Found., 918 F.2d 1065, 1072 (2d Cir. 1990). This conclusion is further buttressed by the Plaintiff's affidavit, which states that Counsel for the Executrix of the Insured's estate was of the understanding that the insurance Policies are not part of the Insured's estate but rather "contracts that are payable pursuant to the terms of the Policies to the beneficiaries of the Policies as determined by this Court." (See O'Toole Aff. ¶ 5.)

Finally, the case cited by the Defendant Penelope Apostoildis in support of her argument, In re Thomas an Agnes Carvel Foundation, 36 F. Supp. 2d 144 (S.D.N.Y. 1999), is inapplicable. The Carvel case concerned several issues regarding the decedent's estate, in a case that was originally filed in Surrogate's Court but removed to federal district court. The case of Dannhardt v. Donnelly, 604 F. Supp. 796 (E.D.N.Y. 1985), also cited by the Defendant, arose in a similar context. Neither of these actions concerned an interpleader action. See id. (concerning an action seeking declaration of entitlement to the entire estate, the distribution of proceeds of the estate, and the payment of any executor's fees already disbursed).

Therefore, this Court will continue to exercise its proper jurisdiction over the present interpleader action. This case will not be transferred to the Suffolk County Surrogate's Court.

D. **As to the Plaintiff's Requested Relief**

NY Life has requested several forms of relief in its present motion.

First, it has requested this Court to permit the Company to deposit the Death Benefits with the Court registry. As the Court has found that all of the jurisdictional requirements of Section 1335 have been met, NY Life is directed to deposit the total sum of $129,038.72, constituting the proceeds of both life insurance policies, in addition to interest to date, with the Court registry in an interest bearing account within twenty days of the date of this Memorandum of Decision and Order.

Second, NY Life has moved to be dismissed from this action with prejudice following the deposit of the Death Benefits with the Court. "[28 U.S.C. §] 2361 authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants." Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund, 982 F.2d 783, 787 (2d Cir.1992). Generally, once an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, "[t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake." 4 James Wm. Moore et al., Moore's Federal Practice § 23.03[2][a] (3d ed. 2005). See New York Life Ins. Co. v. Connecticut

Development Authority, 700 F.2d 91, 95 (2d Cir.1983); <u>Locals 40, 361 & 417 Pension Fund</u>, 2007 WL 80868 at *3.

Here, the Court finds that NY Life has satisfied all of the jurisdictional requirements under 28 U.S.C. § 1335, and there is no indication, that as a neutral stakeholder, NY Life is independently liable to any claimant. Thus, once the interpleader funds are deposited, the Plaintiff is directed to notify the Court with a proposed order. At that time, the Plaintiff will be released and discharged from any further liability to any party in this action or arising out of the life insurance policies issued to Konstantinos Apostolidis, identified by policy numbers 34 575 081 and 37 310 131. <u>See</u> 28 U.S.C. §§ 1335, 2361; Fed. R. Civ. P. 67.

Finally, the Plaintiff has requested this Court to permanently enjoin any of the parties to this action from commencing any other actions or proceedings seeking payment of the Death Benefits. "In addition to allowing a district court to discharge an interpleader plaintiff, section 2361 allows a district court to 'enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court' and to 'make the injunction permanent.'" <u>Bank of America, N.A. v. Morgan Stanley & Co. Inc.</u>, No. 10 Civ. 6322, 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011) (quoting 28 U.S.C. § 2361). "Section 2361 enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Rule 65, Fed. R. Civ. P., which normally governs the issuance of injunctive relief." <u>Sotheby's, Inc. v. Garcia</u>, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992). "An

injunction against overlapping lawsuits obviously is desirable to ensure the effectiveness of the interpleader remedy." 7 Wright et al., supra, § 1717; accord Sotheby's, Inc., 802 F. Supp. at 1066 ("An injunction against overlapping lawsuits is desirable to insure the effectiveness of the interpleader remedy. It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations."); 4 Moore et al., supra, § 22.04[5][a] ("Absent self-restraint of the parties, the only way to ensure that there will not be overlapping litigation is to have the interpleader court issue an injunction against other proceedings.").

Here, a permanent injunction restraining the four Defendant from continuing or bringing any suits against NY Life with regard to the Death Benefits at issue is necessary to protect NY Life from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy. Therefore, NY Life's request for a permanent injunction is granted.

### E. As to Attorneys' Fees

As a final matter, the Plaintiff seeks an award of attorneys' fees and costs associated with this case. In general, a reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." Septembertide Pub., B.V. v. Stein and Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989). "A disinterested and innocent stakeholder, who has been required to expend time and money to participate in a dispute not of his own making and the outcome of which has no impact on him, is entitled to costs and attorneys' fees."

Sparta Florida Music Group v. Chrysalis Records, 566 F. Supp. 321, 322 (S.D.N.Y. 1983).

Nevertheless, "courts need not award attorneys' fees in interpleader actions where the fees are expenses incurred in the ordinary course of business." Travelers Ins. Co. v. Estate of Garcia, No. 00 Civ. 2130, 2003 U.S. Dist. LEXIS 2828, at *13 (E.D.N.Y. Feb. 4, 2003); see Correspondent Servs. Corp. v. J.V.W. Investments Ltd., 204 F.R.D. 47, 49 (S.D.N.Y. 2001). "This is particularly true in the case of insurance companies, where minor problems that arise in the payment of insurance policies must be expected and the expenses incurred are part of the ordinary course of business." Travelers Ins. Co., 2003 U.S. Dist. LEXIS 2828, at *13; see Travelers Indem. Co. v. Israel, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader.").

Here, there is no question that NY Life, a disinterested stakeholder faced with competing claims to the Death Benefits, properly filed this action with the intent to deposit the disputed funds into court. Nevertheless, the Court adopts the view that "[c]onflicting claims to the proceeds of a policy are inevitable and normal risks of the insurance business. Interpleader relieves the insurance company of multiple suits and eventuates in its discharge. Accordingly [such actions are] brought primarily in the company's own self-interest." Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826, 830 (S.D.N.Y. 1977). NY Life did not incur any

unique expenses in filing the present interpleader action that would exceed the ordinary cost of doing business as an insurance company.

Therefore, the Plaintiff's request for attorneys' fees and costs is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff is directed to deposit the sum of $129,038.72, plus claim interest, with the Court registry in an interest bearing account within twenty days of the date of this Memorandum of Decision and Order. Upon payment of the funds with the Clerk of the Court, the Plaintiff shall be released and discharged from any further liability to any party in this action arising out of the life insurance policies issued to Konstantinos Apostolidis, identified by policy numbers 34 575 081 and 37 310 131; **and it is further**

**ORDERED** that pursuant to 28 U.S.C. § 2361 and 28 U.S.C. § 1335, the Defendants are enjoined from instituting any action or other proceeding in any state or United States court affecting the subject matters involved in this interpleader action, **and it is further**

**ORDERED** that the Plaintiff's motion for attorneys' fees and costs is denied.

**SO ORDERED.**

Dated: Central Islip, New York
January 24, 2012

            ___*/s/ Arthur D. Spatt*_____
             ARTHUR D. SPATT
             United States District Judge